IN RE APPLICATION FOR REMOVAL OF EDWARD P. GAR-
RETT, AN ATTORNEY AT LAW OF THIS STATE.[1]

June 2, 1922.

No. 22,885.

**Disbarment of attorney.**
    Accused disbarred for abusing the confidence of his client. [Reporter].

Complaint having been made to the proper committee of the Hen-
nepin County Bar Association that Edward P. Garrett, an attorney
at law residing within that county, had been guilty of deceit and
wilful misconduct in his profession, and the complaint having been
duly investigated, and the executive council of said association hav-
ing found reasonable grounds for believing the attorney guilty and
that such guilt could be proved, and having directed the president
and secretary of that association so to do, Herbert T. Park, as presi-
dent, and Morris B. Mitchell, as secretary of such association filed a
formal accusation covering the facts specified in the third and fol-
lowing paragraphs of the opinion.

Upon the filing of the accusation the court made its order for said
Edward P. Garrett to appear before the court on March 3, 1922, and
that its order be served at least 8 days before that time by handing
to and leaving with him personally a true copy thereof. The sheriff
of Teton county, Idaho, made return that on February 13, 1922, he
served the person known to him as Edward P. Garrett with a copy
of the petition, accusation and order. Upon the return day respond-
ent appeared, objected to the sufficiency of the petition on the
ground that he was not a resident or citizen of the state of Minne-
sota, but was a resident and practicing attorney at law duly licensed
as such in the state of Idaho and that he is no longer an officer of
this court or of any court in the state of Minnesota, and asked
dismissal on the merits.

[1]Reported in 188 N. W. 322.

The court denied the motion for dismissal, being of the opinion that it had the authority and jurisdiction to purge its record of the name of an attorney guilty of misconduct in his profession, even though he has departed from the state and service of notice of the proceeding is made upon him in another state and not within this state.

The court made its order designating Hon. W. W. Bardwell, one of the judges of the Fourth judicial district, to take the evidence in the proceeding and to report the same, together with the findings thereon, to this court, and Paul J. Thompson, Esq., an attorney at law, was appointed to assist the State Board of Law Examiners in all proceedings in support of the petition. Testimony was taken, including that of the accused, and a transcript of the testimony, with his findings of fact, returned by the referee. Judgment of disbarment.

*Vernon C. Pidgeon, Paul J. Thompson* and *H. T. Park,* for petitioner.

*F. D. Larrabee,* for accused.


PER CURIAM.

An accusation was duly filed in this court charging Edward P. Garrett, an attorney at law, with wilful and wrongful misconduct towards a client. Honorable W. W. Bardwell, a judge of the district court of Hennepin county, Minnesota, was appointed to take the evidence and report findings of fact respecting the accusation.

The findings are, in substance, these:

Mr. Garrett was admitted to practice law in this state in June, 1918. In December, 1921, he took up his residence in Idaho, was admitted as an attorney, and is now practicing law in that state.

In July, 1919, he was employed by Amelia Hansen, a widow, who was the owner of a life estate in a 79 acre farm in Mower county, to set aside a contract for the sale of the farm for $13,800. The owners in fee subject to the life estate were her five children, one of whom was a minor. The children had not signed the contract, and, when the purchaser's attention was called to the fact that it could not be enforced, negotiations were had between him and Mr. Garrett, representing Mrs. Hansen, which resulted in a conveyance

of the land executed by all the owners in interest except the minor, and as to him Mrs. Hansen signed in his behalf as guardian ad litem. The price obtained was $15,800, one-half in cash, and for the balance the purchaser executed a note, due in 10 years with 5½ per cent interest, secured by a purchase money mortgage on the farm. The note and mortgage were, by Mr. Garrett's advice, made to Mrs. Hansen. Of the cash received Mr. Garrett disbursed rightfully, as agreed between the parties, $5,300, leaving a balance in his hands of $2,100, $500 of which was to be held in trust for the minor until he should reach his majority.

A few days thereafter, and in September, 1920, while the relationship of attorney and client still existed between Mrs. Hansen and Mr. Garrett, she turned over $400 in money to him in addition to the $1,600 he already had of the proceeds of the farm not set aside to any particular person, and also assigned said $7,900 note and mortgage to him for which he gave her his unsecured note for $9,000, payable to four of her children, due six months after her death, with interest, payable quarterly to Mrs. Hansen during her natural life, at the rate of 8 per cent per annum.

The finding is that Mr. Garrett solicited Mrs. Hansen to do this and to assign said note and mortgage upon the representation that he would invest the same for her benefit, and that the investment would be safe in his hands and she would receive prompt payment of interest. At the suggestion of Mr. Garrett, Mrs. Hansen rented a safe deposit box in a bank wherein to keep this unsecured note. The interest due June 1, 1921, was not paid promptly, and she consulted other parties with the result that another attorney was employed, who instituted suit to recover the money, note and mortgage obtained by Mr. Garrett, in which his property was attached and his bank account garnished. Shortly after obtaining the note and mortgage, Mr. Garrett sold the same to a bank for $6,300. This money so obtained he used in constructing buildings upon lots which he had contracted to buy and in buying lots upon which he intended to build.

After Mrs. Hansen brought her suit, Mr. Garrett caused certain of his real estate to be placed in his wife's name. He also demurred

to her complaint. The demurrer was overruled. As the suit was reached for trial an agreement for settlement was made, under which Mr. Garrett and wife conveyed all property in which they had an interest to be applied in payment of Mrs. Hansen's claim, such property to be appraised by three persons, and if not sufficient to pay Mrs. Hansen in full a note of Mr. Garrett and wife for the balance should be given to Mrs. Hansen. From the appraisal it appears that for more than $2,500 of her claim Mrs. Hansen will have to be content with the unsecured note of the makers, who apparently are possessed of no unexempt property.

Before Mr. Garrett procured the money, note and mortgage from Mrs. Hansen, he discussed the proposition with an attorney of many years' practice, and was by him advised not to deal with his client. The only justification given by Mr. Garrett for disregarding the advice of a brother attorney is that he was ignorant of the fiduciary relationship which in law exists between an attorney and his client.

There is no express finding that the transaction was made by Mr. Garrett with an intent to defraud Mrs. Hansen. But, taking the findings as made and the evidence as reported, there is no escape from the conclusion that Mr. Garrett knowingly failed to consider the best interests of his client in furthering his own. Ignorance of the law cannot be successfully invoked. It is incredible that a person can now secure a diploma from a law school and pass the bar examination without having some knowledge of the fundamentals of the ethics of the profession and of the duty of a lawyer to his client. As a mere business proposition Mr. Garrett could not help but know that the deal he made with Mrs. Hansen was improvident in the extreme, one which he could never have honestly advised her to make with some third party as financially irresponsible as he was. He is 45 years of age and must have had some experience along business lines. But the testimony furnishes earmarks of a design to mislead and indicates that he was aware of the impropriety of the transaction, as, for instance, his counsel to Mrs. Hansen to rent a safety deposit vault in which to hide the unsecured note, and the advice he himself sought and received from a brother lawyer to refrain from the contemplated deal with his client. And again,

when sued, instead of offering to restore as far as possible, he demurred to the complaint, and then attempted to transfer some of the real estate into which Mrs. Hansen's money had gone to his wife.

Attorneys who when they obtain a client take advantage of the confidence gained to deal with such client to his disadvantage, should not be permitted to continue in their calling. Even after the law has given all the aid it is capable of, this widow, through Mr. Garrett's acts, will hold an unsecured note, executed by apparently irresponsible parties, for more than $2,500. This represents a large portion of her small possessions. And, what seems worse, the testimony intimates that for the legal assistance she has had in recovering something from Mr. Garrett an attempt will be made to charge her an extortionate amount. Such matters do not inspire public confidence in the profession. Attorneys at law must understand that they are officers of justice, and that their first duty is to protect the interest of their clients. So doing forbids business deals with them and extravagant charges for services.

We find that Edward P. Garrett was guilty of misconduct in his dealings with his client, Mrs. Hansen, as charged in the accusation. It is therefore ordered that respondent Edward P. Garrett be removed from his office of attorney at law in this state and a formal judgment of disbarment be entered.